IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                      No. CR 07-1761 JB

MICHAEL C. REY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Exclude the Admission of Evidence Concerning Marijuana in Mr. Rey's Yurt, or in the Alternative, to Instruct the Jury that the Marijuana Found in Mr. Rey's Yurt was for his Personal Use and not for Distribution, filed January 10, 2010 (Doc. 201)("Motion"); and (ii) the Defendant's Objections to the Government's Third Notice of Expert Witnesses, filed January 27, 2010 (Doc. 207) ("Objections"). The Court held a hearing on February 25, 2010. The primary issues are: (i) whether the Court should allow Drug Enforcement Special Agent Kevin Small to offer expert testimony at trial; and (ii) whether the Court should exclude all evidence and testimony about the marijuana seized from Defendant Michael Rey's yurt. Because the Court believes Small's testimony is relevant and otherwise admissible, the Court will deny the motion and allow him to offer his proffered testimony. The Court will, however, grant Rey's alternative request for a jury instruction that the marijuana found in his yurt was for his personal use rather than for distribution.

## PROCEDURAL BACKGROUND

In his first trial, Rey denied that he knew the marijuana plaints seized were growing on his

property.  See Trial Transcript at 533:6-534:24 (taken September 16, 2009)(Gorence, Rey)("Sept. 16 Tr.").  Rey also has previously testified that he would leave personal-use marijuana in the yurt for several months.  See Sept. 16 Tr. at 593:18-594:4 (Gorence, Rey).  Ultimately, the jury determined that this marijuana was for his personal use by finding him not guilty of possession with intent to distribute, but guilty of the lesser included offense of single possession.  See Verdict, filed September 18, 2009 (Doc. 179).  The United States now seeks to convict Rey only of manufacturing over 100 plants of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and maintaining a place to facilitate the manufacturing of the drugs in violation of 21 U.S.C. §§ 856(a)(1), 856(b).  Rey is not charged with the possession or distribution of any controlled substance, as the prior jury trial disposed of those counts.

On January 5, 2010, the United States filed its Third Notice of Expert Witnesses.  See Doc. 199.  In it Third Notice of Expert Witnesses, the United States notified Rey that it intends to introduce expert testimony in its case-in-chief at the re-trial.  Drug Enforcement Administration Senior Forensic Chemist Jason Bordelon is expected to testify, based on his observations and laboratory tests, coupled with his training and experience as a DEA chemist, that it is his opinion that the active drug ingredient in DEA Exhibits 1A-J, 2, 3, 4, 5, 6, 7, and 8 is marijuana.  See Third Notice of Expert Witnesses at 1. He will testify regarding the net weight of each exhibit.  See id. The United States has previously produced a summary of Bordelon's testimony and his resume.  See Notice of Expert Witness, filed August 31, 2009 (Doc. 139); Summary of Testimony of Jason Bordelon (dated August 26, 2009), filed August 31, 2009 (Doc. 139-2); Curriculum Vitae of Jason Andrew Bordelon, filed August 31, 2009 (Doc. 139-2).

**1.    Rey's Objections to Small's Testimony.**

The United States has also previously produced a summary of Small's testimony, see Second

Notice of Expert Witness, filed September 8, 2009 (Doc. 144), but the United States' Third Notice of Expert Witness, filed January 5, 2010 (Doc. 199), expanded Small's proffered testimony.  The United States anticipates that Small will testify regarding, among other things:  (i) marijuana grow operations, both indoor and outdoor, and the methods and tools of such operations; (ii) the approximate ages of the marijuana plants found on Rey's property; specifically, Small will testify that the older plants were approximately two- to three-months old; (iii) a marijuana plant generally results in a pound of harvested marijuana; (iv) the post-harvest value of the marijuana plants seized in this case is, given a price of $600.00 per pound in the Albuquerque, New Mexico area, approximately $234,600.00; (v) the number of marijuana plants seized in this case is an amount that is more likely to be for distribution as opposed to personal use; and (vi) the approximate value of the marijuana seized from inside Rey's yurt.  The United States has previously produced Small's resume and the basis for his testimony.  See Resume of DEA Special Agent Kevin Small, filed September 8, 2009 (Doc. 144-2).

Rey objects to part of Small's expert testimony.  Specifically, Rey objects to Small's proffered testimony at points 4, 5, and 6, in which the United States intends to introduce opinion testimony of the following:

> (4)    The post-harvest value of the marijuana plants seized in this case were approximately $234,600.00 given a price of $600.00 per pound in the Albuquerque area.

> (5)    The number of marijuana plants seized in this case in an amount that is more likely to be for distribution as opposed to personal use.

> (6)    The approximate value of the marijuana seized from inside the defendant's yurt.

Objections at 1.  Rey does not challenge Small's qualifications to offer his opinion on these subjects. Rather, he objects based on relevance to the remaining charges with which the United States seeks

to convict him.  See Objections at 2-3.

On February 16, 2010, the United States filed a response to Rey's objections.  See United States' Response to "Defendant's Objections to the Government's Third Notice of Expert Witnesses" [Doc. 207], filed February 16, 2010 (Doc. 211)("Response").  The United States will argue at the second trial, based on the proffered testimony regarding the post-harvest value of the marijuana plants and the number of plants, that the value and number is consistent with distribution and that it is highly unlikely that one would grow such a valuable commodity on someone else's property without the property owner's knowledge.  See Response at 2.  With regard to the marijuana seized from the yurt, the United States will argue that it is highly unlikely that Rey would leave such valuable personal-use marijuana in the yurt for several months.  See id. at 2-3.

**2.    Rey's Motion to Exclude.**

On January 10, 2010, Rey filed a motion asking the Court to exclude any evidence concerning the marijuana that police found in his yurt, or, in the alternative, he asks the Court to give the jury an instruction that the marijuana found in his yurt was for personal use and not for distribution.  See Motion at 1.  He argues that the jury in the prior trial found him not guilty of possession with intent to distribute and that therefore it has been conclusively established that the marijuana in his yurt was not for distribution.  He insists that, if the Court admits that evidence, he will be forced to again rebut the implication that he possessed that marijuana with the intent to distribute it, which would raise double-jeopardy concerns.  See Motion at 1-2, 4.  He also argues that it would violate the principal of collateral estoppel by allowing the United States to relitigate an issue that has been determined by a valid, final judgment of acquittal in a prior proceeding.  See Motion at 2 (citing United States v. Wittig, 575 F.3d 1085, 1098 (10th Cir. 2009), and Yeager v. United States, 129 S. Ct. 2360, 2367 (2009)).  Finally, Rey argues that evidence of the marijuana

-4-

inside his yurt will be substantially more prejudicial than probative, in violation of rule 403 of the Federal Rules of Evidence.  See Motion at 4-5.  In response, the United States argues that the presence of the marijuana within the yurt is relevant because it tends to show that Rey knew of the marijuana found on his property -- it ties Rey to a lifestyle involving marijuana, making it more likely that he was, or knew of, the person growing marijuana on his property.  See United States' Response to Defendant's "Motion to Exclude Evidence Concerning Marijuana in Mr. Rey's Yurt, or in the Alternative, to Instruct the Jury that the Marijuana Found in Mr. Rey's Yurt was for His Personal Use and Not for Distribution" [Doc. 201], filed January 27, 2010 (Doc. 208).

    **3.**    **The Hearing.**

At the Court's hearing, the parties argued Rey's objections and his motion to exclude at the same time, finding the issues to be intertwined.  For that reason, the Court now addresses them concurrently.  Bob Gorence, Rey's attorney, began by arguing against the inference that the United States seeks to use -- that a person in possession of marijuana is more likely to be a grower and cultivator of marijuana plants.  See Transcript of Hearing at 3:11-4:6 (taken February 25, 2010)("Tr.")(Gorence).[1]  He argued that the personal-use drugs in the yurt are not probative of whether Rey had connections to the distribution-quantity marijuana on his property.  See Tr. at 4:6-5:10 (Gorence).  James Braun, Assistant United States Attorney, clarified that the United States had two arguments for admission of the marijuana inside the yurt.  First, that the value of the personal-use marijuana inside the yurt was so high that it was unlikely that Rey would have left it in the yurt for months at a time, and so he must have been on his property during the time that the marijuana plants were growing there.  See Tr. at 6:25-7:6 (Braun).  Second, the fact that Rey was involved with

---

[1] The Court's citations to transcripts of hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

marijuana makes it more likely that he knew that marijuana was growing on his property, and it was not a mere coincidence that some third party selected an avid marijuana-user's property on which to grow his or her marijuana.  See Tr. at 7:10-16 (Braun).

With respect to Small's opinions that were not brought out in the prior trial, Mr. Gorence reiterated his argument that the value of the drugs was not relevant, arguing that the testimony appears intended to paint Rey as a drug dealer, without actually charging him with distribution, to make it more likely that the jury will find him guilty of the charges that the United States is prosecuting in this trial.  See Tr. at 10:2-11:17 (Gorence).  Mr. Braun conceded that, although he did not think it necessary, the United States would not object to the Court instructing the jury that the marijuana found in Rey's yurt was for personal use only.  See Tr. at 12:6-13:4 (Court, Braun).  He argued, however, that by an acquittal on the charge of possession with intent to distribute, the prior jury found only that Rey did not intend to distribute the marijuana within the yurt and not that Rey did not distribute marijuana.  See Tr. at 13:5-20 (Braun).

Mr. Gorence also stated that he intended to cross-examine Mr. Small regarding his new opinions and why they were not raised at the initial trial.  See Tr. at 15:12-16:7 (Gorence).  Mr. Braun, however, argued that the jury need not and should not know that there was a prior trial in this case.  See Tr. at 16:8-16:22 (Court, Braun).  He argued that Mr. Gorence should not be able to bring the timing of Small's opinions before the jury because the issues upon which Small would testify was a strategic decision made by the attorneys.  See Tr. at 16:11-22 (Braun).  Mr. Gorence responded that this second trial would be the same trial as the first, bringing a subset of the initial charges, so there is no reason that this testimony would be relevant now but was not relevant in the prior trial.  See Tr. at 17:23-17:19 (Gorence).

## LAW REGARDING THE EXCLUSION OF EVIDENCE
## UNDER THE DOUBLE-JEOPARDY CLAUSE

Our cases have recognized that the [Double-Jeopardy Clause] embodies two vitally important interests.  The first is the "deeply ingrained" principle that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."  Green v. United States, 355 U.S. 184, 187-188 . . . (1957); see Benton v. Maryland, 395 U.S. 784, 795-795 . . . (1969); [United States v. ]DiFrancesco, 449 U.S. [117,] 127-128 [(1980)].  The second interest is the preservation of "the finality of judgments."  Crist v. Bretz, 437 U.S. 28, 33 . . . (1978).

Yeager v. United States, 129 S. Ct. 2360, 2365-66 (2009).  The second interest is embodied in the principle of collateral estoppel.  "Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in United States v. Oppenheimer, 242 U.S. 85 [(1916)]."  Ashe v. Swenson, 367 U.S. 436, 444 (1980).[2]  The rule, in the criminal context, can be summarized as follows: "'[W]hen an issue of ultimate fact has once been determined by a valid and final judgment' of acquittal, it 'cannot again be litigated' in a second trial for a separate offense."  Yeager v. United States, 129 S. Ct. at 2367.  "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, . . . a court [must] 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'"  Ashe v. Swenson, 367 U.S. at 444.  See United States v. Citron, 853 F.2d 1055, 1058 (2d Cir. 1988); United States v. Addington, 471 F.2d 560, 567 (10th Cir. 1973)("Since it is

---

[2] Thirty more years have now passed since Ashe v. Swenson, and so collateral estoppel has been a rule of criminal law for at least eighty years.

clear that different times and transactions were involved, a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration, and thus collateral estoppel would not apply.")(citing <u>Ashe v. Swenson</u>, 397 U.S. at 444).

## LAW REGARDING RELEVANCE OF EVIDENCE

The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence.  <u>See</u> Fed. R. Evid. 401, 402, and 403.  Under the Federal Rules of Evidence, "[e]vidence which is not relevant is not admissible."  Fed. R. Evid. 402.  "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  "However, even if relevant and offered for a proper purpose, . . . evidence may still be excluded under Rule 403 if its probative value 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .'" <u>United States v. Burgess</u>, 576 F.3d 1078, 1098 (10th Cir. 2009)(quoting Fed. R. Evid. 403).  <u>See</u> <u>United States v. Begay</u>, No. 08-2149, 2009 WL 301828, at *4 (10th Cir. Feb. 9, 2009)("Rule 403 may exclude otherwise admissible evidence if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .'").

## LAW REGARDING MANUFACTURING DRUGS

Under 21 U.S.C. § 841(a)(1), "it shall be unlawful for any person knowingly or intentionally to manufacture . . . or possess with intent to manufacture . . . a controlled substance[.]"

> For purposes of section 841(a)(1), "[t]he term 'manufacture' means the production, preparation, propagation, compounding, or processing of a drug or other substance, . . . and includes any packaging or repackaging of such substance."  21 U.S.C. § 802(15).  "The term 'production' includes the manufacture, planting, cultivation, growing, or harvesting of a controlled substance."  <u>Id.</u> § 802(22).

<u>United States v. Wood</u>, 57 F.3d 913, 918 (10th Cir. 1995)(quoting 21 U.S.C. §§ 802(15), 802(22)).

-8-

The language of the statute contains no mention of determining the economic value of the controlled substances.

### LAW REGARDING USING PREMISES FOR MANUFACTURING DRUGS

Likewise, under 21 U.S.C. § 856(a)(1), it is unlawful to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance[.]"  "In order to convict someone of violating this statute, the government must 'prove that the defendant (1) knowingly (2) opened or maintained a place (3) for the purpose of manufacturing by repackaging, distributing, or using any controlled substance.'" United States v. Verners, 53 F.3d 291, 295 (10th Cir. 1995).  None of the language in 21 U.S.C. § 856(a)(1) triggers any analysis as to the street value of the controlled substances manufactured within such a place.

### LAW REGARDING EXPERT TESTIMONY IN DRUG CASES

As Rey acknowledges, the United States Court of Appeals for the Tenth Circuit recognizes that, when a defendant denies awareness, the value of drugs found in a vehicle driven by a defendant is relevant to the issue of a defendant's knowledge of the presence of the drugs within the vehicle. See Objections at 3 (citing United States v. Rodriguez, 192 F.3d 946, 949 (10th Cir. 1999)). Specifically, the Tenth Circuit recognizes that expert testimony regarding the value of controlled substances may be relevant to prove that such drugs were intended for distribution.  See United States v. Jones, 44 F.3d 860, 876 (10th Cir. 1995)(citing Fitzgerald v. United States, 719 F.2d 1069, 1070 (10th Cir. 1983)).  The Tenth Circuit has also recognized that, when a defendant denies awareness, the value of drugs found is relevant to the issue of a defendant's knowledge of the presence of the drugs within the vehicle.  See United States v. Rodriguez, 192 F.3d 946, 949 (10th Cir. 1999)(citing United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986)).

-9-

## ANALYSIS

Rey contends that the basis for the objection of this testimony by Small is that it is not relevant to the two remaining charges against him.  Rey argues that the proffered testimony is not probative of any of the elements of either manufacturing marijuana or maintaining a place for its manufacture.  See Objections at 2 (Doc. 207).  Rey further argues that testimony regarding the value of the marijuana found in the yurt is irrelevant given that a jury has already determined that this marijuana was for his personal use.  See id.  Rey is correct that neither scenario in United States v. Jones and United States v. Rodriguez exists in the matter presently before the Court.  Nevertheless, the Court finds that the proposed testimony of Small and evidence of the marijuana found in Rey's yurt are relevant to the issues of Rey's knowledge that marijuana was being grown on his property and the frequency with which he visited the property.  The Court will, however, instruct the jury that the marijuana found in Rey's yurt was intended for Rey's personal use and not for distribution.

## I.   SMALL'S TESTIMONY IS RELEVANT AND ITS PROBATIVE VALUE IS NOT SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE.

Contrary to Rey's argument, Small's proffered testimony is relevant to and probative of a necessary element of each of the remaining counts:  Rey's knowledge of the marijuana plants growing on his property.  See Court's Final Set of Jury Instructions, Instructions No. 13 and No. 14 (Doc. 174).  An item of evidence or testimony, to be relevant, need only make the existence of a fact somewhat more or less probably true than it would be without that evidence.  See Fed. R. Evid. 401. Small's testimony meets that burden.

An opinion that the number of plants seized, slightly over 400, is more likely to be for distribution as opposed to personal use is probative and relevant to a charge of manufacturing marijuana.  Similarly, a jury could infer from the value of the marijuana on Rey's property --

roughly a quarter of a million dollars -- that a person is unlikely to plant that quantity of marijuana on someone else's land without the landowner being involved in the operation. The inference might be important in a case where there has already been a prior hung jury.

The value of the marijuana seized in Rey's yurt is also relevant to whether Rey was present on the land during the months that the marijuana grow operation was likely taking place and thus knew of the operation. A juror could infer that a person would not leave that quantity of marijuana unattended for several months, as Rey contends that he did. A jury could reasonably conclude that Rey, despite his allegation to the contrary, was present on his property during the summer of 2006. Thus, testimony about the approximate value of the marijuana seized from Rey's yurt is relevant. As such, the value of the marijuana being grown on property owned by Rey is probative of elements of both manufacturing and maintaining a place for its manufacture. Accordingly, in determining whether a violation of § 841(a)(1) or § 856(a)(1) has occurred, the purported value of the drugs is relevant to the analysis. The Court will therefore overrule Rey's objections.

## II.   EVIDENCE OF THE MARIJUANA FOUND IN REY'S YURT IS RELEVANT TO THE ISSUE OF HIS KNOWLEDGE THAT MARIJUANA WAS BEING GROWN ON HIS PROPERTY.

As the Court concluded in ruling on Rey's objections to Small's testimony, the marijuana seized in Rey's yurt is relevant to the claims that the United States is prosecuting in the second trial. The Court does not believe that testimony regarding the marijuana in the yurt would confuse the jury into thinking that the marijuana seized from within the yurt was for distribution. To avoid the jury acting contrary to the previous jury's finding, however, the Court shall instruct the jury that the marijuana seized within Rey's yurt was for personal use and not for distribution.

The instruction shall not extend to the marijuana grown outside, which marijuana the jury will be free to find someone intended to distribute. Although the jury found that Rey did not possess

-11-

marijuana with intent to distribute, that finding relates, with the requisite certainty, only to the marijuana found in his yurt.  The jury did not clearly find that Rey did not intend to distribute, or at least profit from, the marijuana outside the yurt.

The question the Court must address in determining whether the prior verdict precludes re-litigation of factual issues is "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe v. Swenson, 367 U.S. at 444.  In this case, Rey admitted, and Mr. Gorence reiterated in closing argument, that the marijuana inside the yurt belonged to Rey.  See Sept. 16 Tr. at 532:24-533:7 (Gorence, Rey); id. at 683:12-684:14 (Gorence). Mr. Gorence conceded before the jury that it should probably find Rey guilty of the offense of simple possession based on the marijuana found in his yurt.  See Sept. 16 Tr. at 683:16-20 (Gorence)("[T]here is evidence on the simple possession . . . in defending himself, Michael had to incriminate himself and he told you that is his marijuana.").  No rational jury could thus find that Rey did not possess the marijuana found inside his yurt.  Moreover, no rational jury could base its findings of not guilty on the charge of possession with intent to distribute, yet guilty on the lesser included offense of simple possession, without finding that Rey possessed, but did not intend to distribute, the marijuana found in his yurt.  Rey denied, however, any connection to the marijuana outside the yurt.  The jury, in finding Rey not guilty of possession with intent to distribute, may have believed that the marijuana outside the yurt did not belong to him and that he therefore did not possess it.  They might have found that, because the marijuana was in the ground or because Rey was infrequently on the property, he did not have possession of it.  Alternatively, the jury may have decided that Rey would not distribute the marijuana outside the yurt, and did not consider whether he possessed it.  The jury's verdict, therefore, did not necessarily decide whether Rey intended to, at some point in the future, distribute the marijuana found outside the yurt.  Cf.

United States v. Yeager, 334 Fed. Appx. 707, 708-09 (5th Cir. 2009)(after remand, refusing United States' request to revisit prior panel's factual finding that "the jury must have made a finding that Yeager did not have any insider information").

The proposed instruction should address Rey's double-jeopardy, collateral estoppel, and rule 403 concerns, as the jury will not be allowed to re-assess whether Rey intended to distribute the marijuana in his yurt. It will also, however, not impede the United States from presenting its case in full. The Court therefore will deny Rey's motion to exclude, but grant the alternative relief he requested: an instruction to the jury that the marijuana in his yurt was for personal consumption.

## III.   THE PARTIES SHOULD AVOID MENTION OF THE PRIOR TRIAL DURING THIS TRIAL.

The issue arose during the hearing whether the jury would be informed of the prior trial and/or the results thereof. While the Court understands that both parties may be interested in using testimony from the prior trial to impeach by contradiction testimony that may come out in this second trial, the Court believes the jurors should not be aware of the prior trial. See Thompson v. Pliler, 339 Fed. Appx. 782, 784 (9th Cir. 2009)(holding that a trial judge's restriction on letting parties mention prior trial or the results thereof in retrial after a hung jury did not violate defendant's rights under the Sixth Amendment)(citing Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). If the jury were to discover the existence of a prior trial, even without knowing the result of the prior trial, it may cause them unnecessarily to ponder why there is now a second trial. Worse yet, if the result of the prior trial was revealed to the jury, they may be influenced by what the prior jury did. The Court would prefer to avoid such effects. The Court thus requests that counsel and parties avoid revealing to the jury Rey's prior trial. If counsel wishes to impeachment a witness by prior inconsistent statement using the prior trial transcript, counsel should reveal only that the witness

-13-

gave the relevant testimony in "a prior proceeding," rather than explaining that the testimony came

from a prior trial of Rey

**IT IS ORDERED** that the Objections to the Government's Third Notice of Expert Witnesses

are overruled.  It is further ordered that the Defendant's Motion to Exclude the Admission of

Evidence Concerning Marijuana in Mr. Rey's Yurt, or in the Alternative, to Instruct the Jury that

the Marijuana Found in Mr. Rey's Yurt was for his Personal Use and not for Distribution is granted

in part and denied in part.  The Court will not exclude the evidence concerning the marijuana found

in Rey's yurt, but will grant Defendant Michael Rey's alternative request and instruct the jury that

the marijuana found inside his yurt was intended for his personal use rather than for distribution.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
   United States Attorney
James R.W. Braun
Nicholas Jon Ganjei
   Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Jason Bowles
Bowles & Crow
Albuquerque, New Mexico

-- and --

Robert J. Gorence
Marie T. Legrand
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

      *Attorneys for the Defendant*